UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RMR HOME SOLUTIONS LLC d/b/a ProTaxAppeal and RICK ROBIN, <br><br>   Plaintiffs/Counter-Defendants, <br><br> v. <br><br> DANIEL FARRIS, <br><br>   Defendant/Counter-Plaintiff. | No. 23 CV 7228 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiffs and counter-defendants Rick Robin and his company ProTaxAppeal had a business arrangement with defendant and counter-plaintiff Daniel Farris. Beginning in 2011, Farris helped create software to automate ProTaxAppeal's property tax assessment business. For over a decade, ProTaxAppeal paid Farris for his services. But their contentious relationship eventually led ProTaxAppeal to stop paying and Farris to stop providing services. In July 2023, Farris registered the software with the U.S. Copyright Office, identifying himself as the sole copyright claimant. In September 2023, Farris shut down the system entirely, disrupting ProTaxAppeal's business operations. ProTaxAppeal and Robin sued Farris, seeking a declaratory judgment of non-infringement of Farris's registered copyright. In the alternative, plaintiffs allege that Farris breached an irrevocable implied license. Plaintiffs also sued Farris for tortious interference with ProTaxAppeal's business relationships. Farris filed a counterclaim for copyright infringement. Plaintiffs move for summary judgment on their own claims and move to dismiss the counterclaim

with respect to Robin. For the reasons discussed below, summary judgment is granted in part and plaintiffs' motion to dismiss is granted.

I. **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether summary judgment should be granted, I view all the facts and draw reasonable inferences in favor of the non-moving party. *See Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1141 (7th Cir. 2023). The court gives the non-moving party "the benefit of reasonable inferences from evidence, but not speculative inferences in his favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted).

Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts." *Kreg Therapeutics, Inc. v. VitalGlo, Inc.*. 919 F.3d 405, 415 (7th Cir. 2019). The moving party must file a supporting memorandum of law and statement of facts demonstrating that it is entitled to judgment as a matter of law. *See Petty v. City of Chi.*, 754 F.3d 416, 420 (7th Cir. 2014); N.D. Ill. Local R. 56.1(a). The statement of facts should include "short numbered paragraphs" and make "specific references" to the record. N.D. Ill. Local R. 56.1(a). A movant is entitled to up to "80 separately-numbered statements." N.D. Ill. Local R. 56.1(a).

"A Rule 56.1 statement is not the province of legal arguments." *Hartford Fire Ins. Co. v. Taylor*, 903 F.Supp.2d 623, 634 (N.D. Ill. 2012). But where the statement is consistent with deposition testimony and other facts on the record, it need not be stricken. *See id.* at 634–35.

## II. Facts

RMR Home Solutions LLC—operating under the name ProTaxAppeal—was founded by Rick Robin and specializes in managing appeals for property owners to reduce their tax liabilities. [82] ¶ 1.[1] Since its founding, ProTaxAppeal has assisted thousands of clients. [82] ¶ 1. Robin developed an Excel spreadsheet to assist with his analysis. [82] ¶ 4. The spreadsheet includes a description of the property at issue in an appeal, including its address, square footage, number of stories, and various property characteristics. [88] ¶ 2. The form and data used for appeals are publicly available. [88] ¶ 3.

Robin met Daniel Farris, a software developer, when both were employees at Motorola in the mid-1980s. [82] ¶ 2;[2] [69-2] at 17:3–6. In 2011, Robin pursued a

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are largely taken from the parties' responses to their adversary's Local Rule 56.1 statement of facts, [82] and [88], where both the asserted fact and the opposing party's response are set forth in one document. Any asserted fact that is not controverted by reference to specific, admissible evidence is deemed admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). The parties dispute many facts, but not all of those disputed facts are material.

[2] Farris moves to strike plaintiffs' statement of material facts. [82] at 1–2. That request is denied. Plaintiffs substantially complied with Local Rule 56.1. I need not count facts mechanically; presenting one fact per paragraph would be an inefficient manner of presenting a statement of material facts. *See, e.g., Rivera v. Guevara*, 319 F.Supp.3d 1004,

successful property tax appeal on Farris's behalf. [82] ¶ 4. During that process, Robin provided Farris with a spreadsheet of the data he used for the appeal. [82] ¶ 4.

Though the parties disagree over whose idea it was to automate the appeal process, [88] ¶ 5, Farris ultimately developed a software prototype that allowed ProTaxAppeal (and thus Robin) not to have to manually gather and enter data into the spreadsheet. [88] ¶ 7. In creating the prototype, Farris essentially copied Robin's formatting. [82] ¶¶ 5–6. Before working with Robin, Farris did not have any professional experience in the property tax space. [82] ¶ 11.

It is undisputed that Robin made specific design requests and that at least some of these requests were implemented by Farris. [82] ¶¶ 15, 17, 23. Over the years, the two men exchanged "tens of thousands" of emails. [82] ¶ 32. It is further undisputed that Robin authored the following five paragraphs of text that were integrated into the source code. [88] ¶ 32.

> We have started the appeal process on your behalf by sending a Request for Reduction and Notice of Intent to Appeal (Soft Appeal) to the County/Township Assessor.
>
> The County/Township Assessor has been put on notice that we are representing you, so any correspondence from them should be sent directly to us however we have found this is not always the case and many times the owner of record is contacted instead.
>
> If you receive any correspondence from the County/Township Assessor, County Board of Review (BOR), or State Property Tax Appeal Board (PTAB) please forward it to us immediately for review. Often there are deadlines to be met so time is of the essence. Failure to do

---

1018 (N.D. Ill. 2018). Further, plaintiffs' statement of material facts adequately cites to materials on the record.

> so could result in your appeal being dismissed or your appeal rights waived, however you will still be liable for any appeal fee regardless of appeal outcome.
>
> You should NOT sign any forms unless instructed to do so by us. In most appeals you will not need to take any action and we will do so on your behalf as needed.
>
> The appeal process is slow and usually takes several months after the appeal deadline for your appeal to be decided, but be assured that we are working diligently on your behalf to reduce your assessment by exhausting all your appeal options or until we believe you are fairly assessed. You will receive notification of your appeal results when available, so in the meantime your patience is appreciated.

For about twelve years, Farris continued to update and develop the software. [82] ¶ 47. The software was custom-made for Robin's business. [82] ¶ 39. While Robin was "technically capable" of making changes (meaning he had the knowledge to make changes) to the software, he had "zero access to write or even read any of the code." [88] ¶ 12. On at least one occasion, Robin made a suggestion concerning the source code. [69-3] at 13.

Over that same period, ProTaxAppeal paid Farris about $1.2 million for his work. [82] ¶ 62. Farris had initially approached Robin about an ownership interest in the company in exchange for his work to develop the software, but Robin refused and instead paid Farris at regular intervals. [88] ¶ 8.

This arrangement ended in 2023 after a disagreement arose between the parties. [82] ¶ 63. Farris failed to send an invoice to ProTaxAppeal, and he told Robin that the software would begin to malfunction progressively if he did not receive

5

payment. [82] ¶ 63. Payment ceased and Farris revoked Robin's access to the software. [88] ¶ 20.

Those facts are largely undisputed. The parties dispute the length of time that the software was inoperable after Farris's departure (though agree that it was at least ten days). [88] ¶ 21. The parties also dispute the extent to which Farris's departure has harmed ProTaxAppeal and the extent of Farris's knowledge regarding the company's operations. [88] ¶¶ 22–23. Additionally, Farris disputes the legal consequences of Robin's contributions, arguing that only Farris made substantive contributions to the software. [82] ¶ 15.

The parties, through counsel, attempted to resolve their disagreement through settlement, but negotiations were unsuccessful. [82] ¶¶ 64–65. On June 22, 2023, Farris's counsel sent Robin a draft complaint for copyright infringement. [85-1] at 299. On July 21, 2023, Farris registered his copyright claim for the software with the U.S. Copyright Office. [82] ¶ 51. On September 6, 2023, Robin and ProTaxAppeal filed the present suit seeking, in part, a declaratory judgment of non-infringement. [1]. In response, Farris filed a counterclaim for copyright infringement. [18]. Plaintiffs now move for summary judgment and to dismiss the counterclaim against Robin.

### III. Analysis

#### A. Copyright Infringement

"Joint authorship is a defense to copyright infringement." *Sullivan*, 936 F.3d at 574. Where two or more authors jointly created the work in question, they hold undivided interests in the work and the underlying rights are shared. *Id.* ("A

6

copyright owner cannot infringe its own work."); *see also Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009) ("The benefits of co-authorship are therefore significant: each author may use or license their joint work."). This is true "despite any differences in each author's contributions." *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1068 (7th Cir. 1994). Even a joint author whose contribution is "relatively minor" nonetheless enjoys the benefit of this status. *Id.*

Section 101 of the Copyright Act defines a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. A joint work requires (1) intent to create a joint work; and (2) contribution of independently copyrightable material. *Janky*, 576 F.3d at 362. Further, "copyrightability is always an issue of law," making this dispute particularly ripe for decision on summary judgment. *See Gaiman v. McFarlane*, 360 F.3d 644, 648 (7th Cir. 2004).

### 1. Intent to Create a Joint Work

Starting with the first part of the test for joint authorship, "the focus is on the parties' intent to work together in the creation of a single product, not on the legal consequences of that collaboration." *Id.* Although Farris denies having the requisite intent now, the undisputed facts establish that Robin and Farris intended to be joint authors when the software was created and developed. *See id.*

The attachments to Robin's declaration depict email exchanges between the men spanning over ten years. [69-3]. On many occasions, Robin made direct requests of—and suggestions to—Farris involving the software. [69-3]. Farris points to these

7

emails as evidence that Robin's contributions were minor and more aesthetic (as opposed to substantive) in nature. [85] at 7. While this point may go to the contribution of independently copyrightable material, the emails demonstrate the parties' intent to work together. By humoring Robin over seemingly minor issues such as whether a letter should be lower or upper case, Farris acknowledged Robin as a contributor to the work. [88] ¶ 11. To facilitate the evolution of the software, Farris adopted suggestions made by Robin. [69-2] at 188:21–189:15. Through an exchange of ideas over how the software would work and look, and incorporation by Farris of some of Robin's contributions, the two evinced a shared intent to create the software together. *See, e.g., JCW Invs., Inc. v. Novelty, Inc.*, 289 F.Supp.2d 1023, 1032 (N.D. Ill. 2003).

       2. *Contribution of Independently Copyrightable Material*

With respect to the second part of the test, a joint author must make "a contribution that is independently copyrightable." *Janky*, 576 F.3d at 362. This standard requires "more than a de minimis contribution by each author." *Erickson*, 13 F.3d at 1070. General "[i]deas, refinements, and suggestions" are not enough. *Id.* at 1072. Instead, a joint author must contribute "concrete expressions." *Janky*, 576 F.3d at 363; *see also Sassafras Enters., Inc. v. Roshco, Inc.*, 889 F.Supp. 343, 345–46 (N.D. Ill. 1995) (explaining that copyright protection extends to the expression of an idea but not to the idea itself). While mere descriptive text is not copyrightable, abstract and personalized text *does* constitute protected expression. *See Sassafras Enters.*, 889 F.Supp. at 346 (citing *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*,

12 F.3d 527, 532–38 (5th Cir. 1994)). Specific words, phrases, and sentences can be copyrighted. *See Kepner-Tregoe*, 12 F.3d at 535.

The parties here do not dispute the substance of Robin's contributions. [88] ¶ 32; [85] at 7–8. Instead, Farris denies that any of these contributions constitute independently copyrightable material. [85] at 7–8. But in contrast to the booklet at issue in *Sassafras Enterprises*, Robin's text is "marked by a legally cognizable level of originality." 889 F.Supp. at 347. The five paragraphs of text that he singlehandedly authored possess the minimal level of creativity required for copyright protection. The text is instructive and includes emphasis and advice to clients. It builds upon Robin's extensive experience in the industry.

In the alternative, Farris argues that this five-paragraph text "is effectively boilerplate, standardized and so commonly used in the industry" as to not be copyrightable. [85] at 8. As explained in *Bucklew v. Hawkins, Ash, Baptie & Co.*, copyright protection is not afforded to works "that are so rudimentary, commonplace, standard, or unavoidable that they do not serve to distinguish one work … from another." 329 F.3d 923, 929 (7th Cir. 2003). But like a character with "a specific name and a specific appearance," text that includes specific instructions possesses "more than enough originality and creativity to be copyrightable." *Gaiman*, 360 F.3d at 658–60. The burden is on Farris to prove that the "specific contributions" cited by Robin

9

are not independently copyrightable and he has failed to meet this burden. *See Erickson*, 13 F.3d at 1072.[3]

Farris's copyright registration does not defeat Robin's joint authorship claim. For example, in both *Gaiman* and *Janky*, a copyright registered to a sole author did not prevent a court from later finding the existence of a joint authorship and honoring all the implications of such a finding. 360 F.3d at 653; 576 F.3d at 361–62. Just because Farris "does not concede the issue of joint ownership" does not make this a dispute of material fact. [85] at 9. As explained above, Robin has satisfied both elements of joint authorship and Farris cannot deny Robin of his ownership rights merely because he was the first to register the product.[4]

### 3. Implications of Joint Authorship

Robin is a joint author of the software, which means that he (and his company ProTaxAppeal) cannot infringe on a copyright in which he is a joint author. Plaintiffs are entitled to a declaratory judgment as a matter of law that they do not infringe the copyright. As a necessary consequence of this finding, Count II of plaintiffs' complaint (which was pled as an alternative theory in the event Farris held the sole copyright)

---

[3] The lone case that Farris cites for the proposition that Robin's text is not copyrightable is *UIRC–GSA Holdings Inc. v. William Blair & Co., L.L.C.*, 264 F.Supp.3d 897 (N.D. Ill. 2017). Yet in that case, the court specifically noted that the party seeking joint author status "failed to allege any details about any contributions it made to the copyrighted materials at issue." *Id.* at 903. Here, in contrast, Robin points to—and Farris does not dispute—many contributions he made to the software.

[4] To hold otherwise would be to disregard the timeline of this dispute. Farris claims that the software was his idea and that he was the sole author of the product from its inception in 2011. Yet he waited until 2023—after the relationship between the two men had broken down—to register the copyright. A post hoc rationalization does not create a genuine dispute of material fact. *See Janky*, 576 F.3d at 362.

is dismissed as moot. A party does not need a license to use a copyrighted work that they are legally entitled to use. And for the same reason, Farris's counterclaim for copyright infringement is dismissed with prejudice.[5]

### B. Tortious Interference

Having granted summary judgment (and dismissed) the claims providing federal jurisdiction for this case, I now decline supplemental jurisdiction of the remaining state-law claim under 28 U.S.C. § 1367(c). Indeed, "when the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016). This is not one of those "unusual cases" where "judicial economy, convenience, fairness and comity" are served by me retaining this case, and thus dismissal is warranted. *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). The dismissal of the tortious inference claim is without prejudice to plaintiffs refiling their claim in state court.

## IV. Conclusion

Plaintiffs' motion for summary judgment, [67], is granted in part. Plaintiffs are entitled to a declaratory judgment of noninfringement, their claim for breach of

---

[5] Plaintiffs moved only to dismiss the counterclaim with respect to Robin individually. But Farris's counterclaim is a mirror image of Count I of plaintiff's first amended complaint, and in granting summary judgment in favor of plaintiffs on this count, it necessarily follows that defendant's counterclaim fails in its entirety. The parties also briefed whether Farris could recover statutory damages and attorney's fees. Though "§ 412 operates akin to an affirmative defense" and is waived "when a defendant waits until the eleventh hour or beyond to raise" it, *see Sullivan*, 936 F.3d at 573, the summary judgment phase is not the eleventh hour in this case. There was no waiver, but because I find that there has been no copyright infringement, this question is moot.

11

contract is dismissed, and defendant's counterclaim is dismissed with prejudice. Plaintiffs' tortious-interference claim is dismissed without prejudice under 28 U.S.C. § 1367(c). Enter judgment and terminate civil case.

ENTER:

                                                Manish S. Shah
                                                United States District Judge

Date: December 11, 2025